*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| CHARLES EATON,           )<br>                         )<br>        *Plaintiff*     )<br>                         )<br>v.                       )<br>                         )<br>MICHAEL J. ASTRUE,       )<br>**Commissioner of Social Security,**  )<br>                         )<br>        *Defendant*     )  | *Civil No. 07-188-B-W* |

### *REPORT AND RECOMMENDED DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from attention deficit disorder, social anxiety, learning disability, and behavioral disability, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from severe impairments of coronary artery disease, anxiety, and depression, Finding 3, Record at 337; that his allegations regarding his limitations were not totally reliable for reasons set forth in the body

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

of the decision, Finding 5, *id*.; that he retained the residual functional capacity ("RFC") for unskilled, medium exertional capacity work, could interact appropriately with co-workers and supervisors, could not tolerate interaction with the public, and could adapt to minor changes in routine, Finding 6, *id*.; that, considering the types of work he was still functionally capable of performing, as well as his age ("younger individual"), education (limited), and work experience, he could be expected to make a vocational adjustment to work existing in significant numbers in the national economy, including as a dishwasher and a laundry worker, Findings 7-9, *id*. at 337-38; and that he therefore had not been under a disability at any time through the date of decision, Finding 10, *id*. at 338.  The Appeals Council declined to disturb the decision, *id*. at 325-27, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[2]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the

---

[2] The decision of which the plaintiff complains was issued following this court's reversal of a previous decision and remand for further proceedings.  *See* Record at 342-44.  Following remand, additional records were submitted, and a new hearing was held at which the plaintiff and a vocational expert testified.  *See id*. at 405-42.

2

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff argues, in the main, that the administrative law judge arrived at a mental RFC finding unsupported by substantial evidence, inappropriately rejecting the RFC assessment of examining psychologist Brian Rines, Ph.D., and failing to include, in a hypothetical question to a vocational expert, all of the restrictions found by a Disability Determination Services ("DDS") non-examining psychologist, Thomas A. Knox, Ph.D., whose opinion he purported to embrace. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 12) at 1-13.[3] I find no error.

## I. Discussion

### A. Rines RFC Opinion

Following reversal of an earlier adverse decision in his case and remand for further proceedings, the plaintiff submitted a report of Dr. Rines dated December 8, 2005, in which, based on a review of records, a two-hour evaluation, and administration of a psychological test, the MMPI-2, Dr. Rines identified a number of restrictions in the plaintiff's mental functional capacity. *See* Record at 390-98.

> Dr. Rines summarized the results of his MMPI-2 testing of the plaintiff as follows:
>
> His manner of responding to the test created a likely valid profile, but it also seemed as if he were attempting to create a positive impression and may be somewhat guarded about personal information. From a clinical perspective he may be slightly overstating the range and intensity of his problems.
>
> People with this profile are usually considered to be significantly psychologically impaired, sufficiently so as to have a negative [e]ffect on their adult functioning.

---

[3] Although the plaintiff's Statement of Errors and Fact Sheet indicate that he challenges the instant adverse decision as to both SSI and childhood disability benefits, *see* Statement of Errors at 1; Fact Sheet, the Record indicates that the plaintiff's prior counsel withdrew his request for childhood disability benefits at his first hearing, *see* Record at 32-33, and the decision of which the plaintiff now complains pertained to his SSI request only, *see id*. at 331, 338.

>He is likely to be seen as an insecure socially sensitive man with disturbing and confusing thoughts.
>
>He is likely to shut himself off from others from whom he might learn the rules of ordinary social conduct. Even limited involvement with others may be more than he can tolerate and people with this profile are likely to design their life to avoid that. Accordingly, daydreams and fantasies are the primary mode of gratification.
>
>Cognitively, his thought processes are clearly beyond normality and emotionally he is likely to be depressed with a diminished mental alertness, slowed though[t] processes, lethargy and worried about his health. He also is likely to be troubled by numerous traumatic experiences that have occurred in his life.
>
>Regarding occupational efforts, people with this profile usually find the social, mental and physical demands of employment beyond their capacity or tolerance.

*Id*. at 395-96.

Dr. Rines concluded that the plaintiff had marked restrictions in activities of daily living, extreme difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace, and likely continuous repeated episodes of decompensation within a 12-month period each of at least two weeks' duration. *See id*. at 397. In a detailed breakdown of these overarching findings, he deemed the plaintiff unable to meet competitive standards in a number of areas, including accepting instructions and responding appropriately to criticisms from supervisors and dealing with normal work stress. *See id*. at 394.

The administrative law judge rejected the Rines opinion in part, explaining:

>Dr. Rines' opinion as to the degree of impairment flowing from the claimant's mental illness is rejected in part, even though his opinion has the advantage of longitudinal perspective. Dr. Rines found the claimant suffered moderate deficiencies of concentration, persistence and pace. Though this finding is consistent with the statements of the claimant's girlfriend, this finding does not preclude the claimant performing simple tasks. Dr. Rines found the claimant suffered marked impairments of activities of daily living, a finding that is inconsistent with the claimant's self-reported functional activities of daily living, including caring for a toddler, preparing meals and driving a car, looking for part-time work, and working part-time as a car mechanic. Dr. Rines found the claimant suffered extreme difficulties in social functioning. This finding is inconsistent with the claimant's daily use of Internet chat rooms for several hours,

4

> his socialization with friends outside the claimant's residence on a daily basis for several hours, and the claimant's ability to dine in restaurants on a regular basis.
>
> These inconsistencies undermine the probative value of the use of the MMPI-II test by Dr. Rines to estimate the degree of impairment suffered by the claimant, particularly with respect to the claimant's ability to interact with supervisors and the claimant's inability to respond appropriately to work stress. By contrast, these inconsistencies tend to support that portion of the MMPI-II that suggests the claimant magnified his symptoms.

*Id.* at 336 (citations omitted). He then adopted the mental RFC opinion of Dr. Knox, explaining that he considered it "consistent with the nature of the illnesses suffered by the claimant, the claimant's wide-ranging activities of daily living, the claimant's limited motivation to work on a regular basis, and proportionate to the clinical observations and mental status examinations of record." *Id.*

> In the mental RFC report to which the administrative law judge referred, Dr. Knox stated:
>
> 32 [year old] man [with history of] emotional difficulties, says he is easily distracted. This is partially supported; [consulting examiner] does diagnose ADHD, but finds intact concentration.[4]
>
> A -  He obtained [Full Scale] IQ of 91, Working Memory Index of 90. [Consulting examiner] noted intact memory. He can understand + remember simple and complex instructions.
>
> B – [Consulting examiner] notes [claimant] was able to carry out simple instructions. His concentration did not seem impaired. [Claimant] says in Adult Function Form he watches TV without difficulty concentrating or understanding. He can carry out simple tasks in a normal schedule.
>
> C – [Consulting examiner] report says he presented as interpersonally appropriate. He was noted to be cooperative. He can interact appropriately [with] coworkers + supervisors, not [with] the public.
>
> D – He can adapt to minor changes in routine.

*Id.* at 305.

---

[4] Dr. Knox referred to the report of DDS consulting examiner Mary Alyce Burkhart, Ph.D., dated February 21, 2003. *See* Record at 227-32.

The plaintiff faces an uphill battle in his effort to identify error in the decision to credit one expert's RFC opinion over that of another, a classic resolution of conflicts in the evidence that the First Circuit has recognized falls within the bailiwick of an administrative law judge. *See Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). His effort falls short.

While, as the plaintiff notes, the Rines opinion was the freshest of record and was buttressed by results of MMPI-2 testing, *see* Statement of Errors at 2, 5, the administrative law judge supportably declined to credit it *in toto* on grounds that:

1. The finding that the plaintiff suffered marked restrictions in activities of daily living was inconsistent with the plaintiff's self-reported activities, including caring for a toddler, preparing meals, driving a car, looking for part-time work, and working part-time as a car mechanic. *See* Record at 336; *see also, e.g., id.* at 156 (meal preparation), 171 (child care), 230 (report of Dr. Burkhart that plaintiff noted he could do housework, although he tended to procrastinate, could cook and do laundry, earned money doing odd jobs such as fixing cars, and could shop).[5]

2. The finding that the plaintiff suffered extreme difficulties in social functioning was inconsistent with his daily use of Internet chat rooms for several hours, his socialization with

---

[5] The plaintiff asserts that the evidence shows that he could care for his toddler only if his girlfriend were present to assist, that his meal preparation consisted mostly of opening cans and boiling water, that driving a car and working on cars are solitary activities that do not undercut Dr. Rines' views, and that he did not look for part-time work during the relevant period. *See* Statement of Errors at 6-7. There is sufficient evidence of record to support the administrative law judge's finding that the plaintiff engaged in a fairly broad range of daily activities, whether solitary or not, undercutting Dr. Rines' conclusion that he suffered marked restrictions in activities of daily living. *See, e.g.*, Record at 156 (plaintiff cooked two to three meals a week, usually full course), 171 (while girlfriend stated that she was present to help plaintiff care for his three-year-old son, she described plaintiff as playing with his son, feeding him, and helping him with things he was unable to do), 230 (activities reported to Dr. Burkhart).

friends outside of his residence on a daily basis for several hours, and his ability to dine in restaurants on a regular basis. *See id*. at 336; *see also, e.g., id*. at 170 (plaintiff plays on the computer for several hours; at 10 p.m., travels to visit close friend until early morning), 174 (plaintiff chats with people on the computer; every night, he and girlfriend go into town to visit a close friend of his; every night after 10 p.m., he and girlfriend go to Dunkin Doughnuts).[6]

        3.       These inconsistencies undermined the probative value of use of the MMPI-2 test by Dr. Rines to estimate the degree of impairment the plaintiff suffered, particularly his inability to interact with supervisors and respond appropriately to work stress, while tending to support that portion of the MMPI-2 suggesting that the plaintiff magnified his symptoms. *See id*. at 336; *see also, e.g., id*. at 395.[7]

At oral argument, counsel for the plaintiff contended that the administrative law judge impermissibly rejected the opinion of an expert, buttressed by objective testing, by comparing it unfavorably against the plaintiff's activities of daily living. He asserted that, in so doing, the administrative law judge exceeded the bounds of his expertise, in a manner analogous to drawing conclusions based on raw medical evidence, and did not comport with criteria for review of medical source opinions delineated in 20 C.F.R. § 404.1527(d). Nonetheless, section 1527(d) expressly contemplates that an expert's opinion may be judged, *inter alia*, with reference to

---

[6] The plaintiff contends that the Record reveals that he visited Dunkin Doughnuts only if accompanied by his girlfriend and after 10 p.m., when there were few people, that he shopped at Wal-Mart only in the early morning hours, and that the only place he went alone was to his parents' house. *See* Statement of Errors at 6; Record at 150, 173-74. He complains that the administrative law judge provided no explanation for how the disembodied and anonymous form of contact via Internet chat rooms was inconsistent with Dr. Rines' views. *See* Statement of Errors at 7. Nonetheless, even taking these caveats into account, the administrative law judge reasonably found that the plaintiff possessed the ability to socialize sufficiently, both via daily use of the Internet and daily outings, to demonstrate inconsistency with Dr. Rines' finding of extreme difficulties in social functioning.

[7] In assailing the administrative law judge's handling of Dr. Rines' report, the plaintiff points out that the administrative law judge ignored findings of a DDS consulting examiner, Eric J. Caccamo, D.O., that he contends were similar to those of Dr. Rines. *See* Statement of Errors at 4-5; Record at 253-56. Any error in ignoring Dr. Caccamo's report was harmless. Dr. Caccamo, who is not a mental health expert, performed a physical examination of the plaintiff. *See* Record at 253-56. To the extent he touched on the plaintiff's mental health, he appears to have relayed the plaintiff's self-report of various difficulties. *See id*. at 255.

whether it is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(4). Such a judgment call is well within the bounds of an administrative law judge's expertise. Further, the administrative law judge in this case buttressed his partial rejection of the Rines opinion with reference to a second enumerated factor, supportability, *see id*. § 404.1527(d)(3), when he observed that MMPI testing had suggested that the plaintiff magnified his symptoms, *see* Record at 336. The administrative law judge hence invoked permissible grounds for declining to embrace the Rines opinion *in toto*.

To the extent that the plaintiff complains that the administrative law judge erred as a matter of law in placing undue weight on his activities of daily living, *see* Statement of Errors at 7-8, I find this argument, as well, unpersuasive. The plaintiff's case is materially distinguishable from the caselaw on which he relies. *See id*. (citing *Mendez v. Barnhart*, 439 F.3d 360 (7th Cir. 2006); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005)). In this case, unlike in *Mendez* and *Gentle*, the administrative law judge did not point to the plaintiff's activities of daily living as positive evidence of his capacity to undertake full-time employment but rather, as relevant to this discussion, took them into account in the context of choosing to credit one expert RFC opinion over another. *See* Record at 336; *compare Mendez*, 439 F.3d at 362 ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."); *Gentle*, 430 F.3d at 867 ("The administrative law judge's casual equating of household work to work in the labor market cannot stand. . . . [T]aking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not.").

8

In short, the administrative law judge permissibly resolved a conflict in the evidence, choosing for permissible reasons, supported by record evidence, to reject Dr. Rines' opinion in part. No more was required.

### B.  Knox RFC Opinion

The plaintiff next suggests that the administrative law judge erred in his handling of the Knox RFC opinion for at least three reasons: (i) Dr. Knox did not have the benefit of review of the later Rines report, including results of MMPI-2 testing, as a result of which the Knox report cannot stand as substantial evidence of the plaintiff's mental RFC, (ii) Dr. Knox, a non-examining consultant, misconstrued the Burkhart report on which he purported to rely, and, (iii) even assuming *arguendo* that the administrative law judge properly embraced Dr. Knox's RFC findings, he failed to transmit all of them to the vocational expert at hearing, undermining the relevance of that testimony. *See* Statement of Errors at 2-3, 5, 9-13.

As the plaintiff notes, *see id*. at 2, 5, as a general rule, a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question, *see, e.g., Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (agency RFC forms could not "constitute substantial evidence that [the claimant] was capable of performing the full range of light work at the time of the hearing (in December 1991) . . . because the opinions in these agency RFC assessment forms (completed in January 1991) were not based upon the full record in this case"); *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir.1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-

9

examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted); *Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006).

Nonetheless, I am unpersuaded that, in this case, the issuance of the later report undermined the earlier one. Although, as the plaintiff emphasizes, *see* Statement of Errors at 5, Dr. Rines' opinion was buttressed by new MMPI-2 testing, Dr. Rines himself expressed some doubt as to the validity of those test results, *see* Record at 395, and the administrative law judge supportably found Dr. Rines' conclusions as to the severity of the plaintiff's functional limitations inconsistent with other evidence of record.

Nor do I find Dr. Knox's opinion inconsistent with Dr. Burkhart's findings. Dr. Burkhart concluded:

> Mr. Eaton has the intellectual capacity to engage[] in work-related activities. His work history has been below his intellectual capabilities. He does not appear to have problems with understanding. Given his full history, he may have some difficulties sustaining his concentration and persisting at a task over several hours or on a consistent day to day basis. Mr. Eaton reported difficulty interacting with other[s,] particularly tolerating authority. Mr. Eaton['s] problems with severe ADHD seemed to have improved in that he is no longer hyperactive and impulsive. He may still have some attention problems that might be addressed pharmacologically and with behavior management strategies. He also appears to have grown up in a possibly very stressful home. He is now sensitive to stress and easily irritated by others. Whatever problems he may have developed from his childhood, he may be well-advised to seek appropriate treatment. If he could better manage his interactions with others, Mr. Eaton would be [a] candidate for vocational rehabilitation services as well as possibly attending a community college.

*Id*. at 231. The plaintiff asserts that Dr. Burkhart implied that he could not manage his interactions with others adequately and that his future employment depended upon first obtaining vocational rehabilitation. *See* Statement of Errors at 3. He argues that vocational rehabilitation services, by definition, are available only to those who are not vocationally capable without

them, and thus Dr. Burkhart's report cannot be considered evidence of his ability to work without first receiving either medication and/or treatment to help him deal with others. *See id.*

To the extent that Dr. Burkhart addressed the plaintiff's prospects of accessing vocational rehabilitation or college, she addressed the ultimate question of his employability, not of his functional capacity. In translating Dr. Burkhart's findings into an RFC opinion, Dr. Knox relied on and incorporated both evidence of the plaintiff's daily functioning and Dr. Burkhart's actual findings on mental status examination, for example, that the plaintiff "was able to attend to and carry out simple directions[,]" his "concentration did not appear impaired[,]" his "memory was intact[,]" and he "presented as interpersonally appropriate." *Compare id.* at 229 *with id.* at 305. I find no fatal misuse or misunderstanding of her report.

To the extent that the plaintiff complains that the administrative law judge erred in failing to transmit all of Dr. Knox's findings of restriction to the vocational expert, *see* Statement of Errors at 9-13, his argument rests on a misunderstanding of the commissioner's RFC form. As this court previously has held, section III of the RFC form, containing the narrative report, rather than Section I (the checkboxes on the two preceding pages) constitutes the expert's RFC assessment. *See Lichtenstein v. Barnhart*, No. 05-111-P-H, 2006 WL 1554630, at *3 (D. Me. June 1, 2006) (rec. dec., *aff'd* July 5, 2006); Social Security Administration Program Operation Manual System § DI 24510.060(B)(2)(a) & (4)(a), *available at* https://s044a90.ssa.gov/apps10/ ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could

or could not be performed in work settings.") (boldface omitted). Thus, the fact that the administrative law judge did not transmit Dr. Knox's Section I checkbox findings to the vocational expert is immaterial.[8] He accurately transmitted Dr. Knox's mental RFC assessment, as contained in Section III, to the vocational expert. *Compare* Record at 305 *with id*. at 422.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of November, 2008.

> /s/ John H. Rich III
> John H. Rich III
> United States Magistrate Judge

---

[8] The plaintiff also complains that, whereas Dr. Knox found him to have moderate limitations in activities of daily living, the administrative law judge inexplicably found him to have only mild limitations in that sphere. *See* Statement of Errors at 9. The plaintiff, however, references a finding in the earlier decision that was vacated on appeal to this court. *See id*; Record at 20.